70 A.3d 725

KIMBA MEDICAL SUPPLY, A/S/O CARLOS GALEANO, PLAIN-TIFF–RESPONDENT/CROSS–APPELLANT, v. ALLSTATE IN-SURANCE COMPANY OF NJ, DEFENDANT–RESPONDENT, AND NATIONAL ARBITRATION FORUM, FORTHRIGHT, DE-FENDANT–APPELLANT/CROSS–RESPONDENT.

ROY J. PICKELL, PLAINTIFF–RESPONDENT, v. TRAVELERS AUTO INSURANCE COMPANY OF NEW JERSEY A/K/A TRAV-ELERS OF NEW JERSEY INSURANCE COMPANY, DEFEN-DANTS–RESPONDENT.

FORTHRIGHT, INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 11, 2013—Decided July 5, 2013.

464

Before Judges PARRILLO, SABATINO and FASCIALE.

*Arthur J. Timins* argued the cause for appellant/cross-respondent National Arbitration Forum, Forthright in A–1443–11T2 and for appellant Forthright in A–1902–11T2 (*Shiriak & Timins*, attorneys; *Mr. Timins*, on the briefs).

*Sean T. Hagan* argued the cause for respondent/cross-appellant Kimba Medical Supply in A–1443–11T2.

*David J. Klinger* argued the cause for respondent Allstate in A–1443–11T2 (*Gutterman, Markowitz & Klinger, LLP,* attorneys; *Mr. Klinger* and *Frank W. Farrell,* on the brief).

*Deborah J. Davison* argued the cause for respondent Roy J. Pickell in A–1902–11T2 (*Law Offices of Riaz A. Mian,* attorneys; *Ms. Davison,* on the brief).

*Michael R. Eatroff* argued the cause for respondent Travelers in A–1902–11T2 (*Methfessel & Werbel,* attorneys; *Mr. Eatroff,* on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

These two companion [1] appeals, both arising out of cases involving contested automobile personal injury protection ("PIP") bene-

---

[1] The cases were argued back-to-back on appeal because of the overlapping legal issues they present concerning the trial court's remand authority. We

fits, raise a common jurisdictional question. The common question concerns whether the trial court, under the New Jersey Alternative Procedure for Dispute Resolution Act ("APDRA"), *N.J.S.A.* 2A:23A–1 to –19, and associated PIP regulations cross-referencing that statute, has the authority to remand unresolved factual questions to a dispute resolution professional ("DRP") after that court has vacated or modified a DRP's decision. The organization that contractually provides the State with DRPs who hear PIP matters, Forthright, insists that the trial court has no such power to remand any PIP cases. Consequently, Forthright does not want to proceed with the present cases a second time, despite remand orders from the trial court directing it to do so.

Exercising our supervisory appellate function, we reject Forthright's interpretation of the law. We conclude that Sections 13 and 14 of the APDRA, *N.J.S.A.* 2A:23A–13 and –14, must be sensibly construed to authorize such remands to a DRP, in certain limited situations where a PIP arbitration award has been judicially vacated or modified. We therefore affirm the trial judges' sound decisions to remand each of these two PIP cases to Forthright in the circumstances presented, so that open issues can be decided in that arbitral forum on an appropriate record. In addition, we affirm the trial judge's separate ruling in A–1443–11 determining the PIP coverage limits that apply to the insured in that particular case.

## I.

Pursuant to *N.J.S.A.* 39:6A–5.1(a) ("the PIP statute"), "[d]isputes between an insurer and a claimant as to whether benefits are due under the PIP statute may be resolved, at the election of either party, by binding arbitration or by civil litigation." *Riverside Chiropractic Grp. v. Mercury Ins. Co.*, 404 *N.J.Super.* 228, 235, 961 *A.*2d 21 (App.Div.2008). The Legislature has empowered

---

consolidate the cases solely for purposes of appeal, with the expectation that they again will proceed separately on remand.

the Commissioner of Banking and Insurance to designate an organization to serve as an arbitration forum for such PIP disputes, where the parties have elected that procedure. *N.J.S.A.* 39:6A–5.1(b). The organization that presently serves in that capacity is Forthright, otherwise known as the National Arbitration Forum ("NAF"). The submissions on appeal and the Department's website indicate that over 50,000 PIP cases are filed with that arbitral forum each year.[2]

The Legislature has further authorized the Commissioner to adopt rules and regulations for the conduct of such PIP arbitration proceedings. *N.J.S.A.* 39:6A–5.1(b). The Commissioner has duly adopted such regulations, which are codified at *N.J.A.C.* 11:3–5.1 to –5.12. Among other things, the statute specifies that "[a]ll decisions of the [DRP] shall be in writing, ... shall state the issues in dispute, [and] *the findings* and conclusions on which the decision is based[.]" *N.J.S.A.* 39:6A–5.1(c) (emphasis added); *see also N.J.A.C.* 11:3–5.6(d) (mandating such findings and other requirements).

The PIP statute further declares that "[a]ll decisions of a [DRP] shall be binding." *N.J.S.A.* 39:6A–5.1(c). However, both the Commissioner's own regulations and case law allow for a limited right of review of the DRP's rulings in the Superior Court, following internal review procedures that may be available within the arbitral forum itself.

Most significantly, the Commissioner has incorporated aspects of the APDRA to govern PIP arbitrations in the designated forum. *See N.J.A.C.* 11:3–5.6(g) (declaring that "[t]he final determination of the [DRP] shall be binding upon the parties, but subject to clarification/modification and/or appeal as provided by the rules of the dispute resolution organization, and/or vacation, modification or correction by the Superior Court in an action filed

---

[2] *See* PIP Information for Healthcare Providers, *N.J. Dep't of Banking & Ins.*, http://www.state.nj.us/dobi/pipinfo/aicrapg.htm# dispute (last visited June 12, 2013) (follow links to "Administrator Quarterly Reports" for the 2012 year).

pursuant to *N.J.S.A.* 2A:23A–13 for review of the award"). In that vein, we have held that "when [a]lternative [d]ispute [r]esolution is applied to PIP disputes, it must be conducted pursuant to the APDRA." *Riverside Chiropractic, supra,* 404 *N.J.Super.* at 235, 961 *A.2d* 21 (citing *Coalition for Quality Health Care v. N.J. Dep't of Banking & Ins.,* 348 *N.J.Super.* 272, 312, 791 *A.2d* 1085 (App.Div.), *certif. denied,* 174 *N.J.* 194, 803 *A.2d* 1165 (2002)).

The APDRA's mechanism for the limited review of decisions made by neutral DRPs,[3] *N.J.S.A.* 2A:23A–13 ("Section 13"), which the Commissioner has adopted for PIP arbitrations, is at the heart of the present appeals. Because Section 13 is critical to our analysis, we initially present the relevant full portions of its text here for ease of reference:

Application to court for review of award[.]

a. A party to an alternative resolution proceeding shall commence a summary application in the Superior Court for its vacation, modification or correction within 45 days after the award is delivered to the applicant, or within 30 days after receipt of an award modified pursuant to subsection d. of [s]ection 12 of this act, unless the parties shall extend the time in writing. The award of the umpire shall become final unless the action is commenced as required by this subsection.

b. In considering an application for vacation, modification or correction, a decision of the umpire on the facts shall be final if there is substantial evidence to support that decision; provided, however, that when the application to the court is to vacate the award pursuant to paragraph (1), (2), (3), or (4) of subsection c., the court shall make an independent determination of any facts relevant thereto de novo, upon such record as may exist or as it may determine in a summary expedited proceeding as provided for by rules adopted by the Supreme Court for the purpose of acting on such applications.

c. The award shall be vacated on the application of a party who either participated in the alternative resolution proceeding or was served with a notice of intention to have alternative resolution if the court finds that the rights of that party were prejudiced by:

(1) Corruption, fraud or misconduct in procuring the award;

(2) Partiality of an umpire appointed as a neutral;

(3) In making the award, the umpire's exceeding their [sic] power or so imperfectly executing that power that a final and definite award was not made;

---

[3] The neutrals are generically described within the APDRA as "umpires." *See N.J.S.A.* 2A:23A–5. In the present context, the DRP who hears a PIP arbitration performs the same role as an "umpire" under the APDRA.

(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or

(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.

. . . .

f. Whenever it appears to the court to which application is made, pursuant to this section, either to vacate or modify the award because the umpire committed prejudicial error in applying applicable law to the issues and facts presented for alternative resolution, the court shall, after vacating or modifying the erroneous determination of the umpire, appropriately set forth the applicable law and arrive at an appropriate determination under the applicable facts determined by the umpire. The court shall then confirm the award as modified.

[*N.J.S.A.* 2A:23A–13.]

As we have previously recognized, the APDRA's enumerated grounds for vacating an award under subsection 13(c) are limited. *See Riverside Chiropractic, supra,* 404 *N.J.Super.* at 235, 961 *A.*2d 21 (noting that "[t]he APDRA sets strict limits on the appeal of an arbitration award").[4] Assuming that the enumerated grounds for relief are not met, the decision of the DRP (or, as the APDRA describes the neutral, the "umpire") "shall be final if there is substantial evidence to support [his or her] decision." *N.J.S.A.* 2A:23A–13(b).

To expedite the achievement of finality, the statute further prescribes in Section 18 that, after the trial court's review of the decision, "[t]here shall be no further appeal or review of the judgment or decree." *N.J.S.A.* 2A:23A–18(b). However, case law has clarified that our appellate courts retain the discretion to exercise supervisory authority over such trial court rulings for reasons of public policy. *See Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P.,* 154 *N.J.* 141, 152, 712 *A.*2d 180 (1998); *see also Riverside Chiropractic, supra,* 404 *N.J.Super.* at 235–36, 961 *A.*2d 21.

The core question presented here is whether, within this scheme of alternative dispute resolution for PIP matters patterned after

---

[4] Similar principles apply to the limited standards for modifying an award. *See N.J.S.A.* 2A:23A–13(e).

the APDRA, a trial court possesses the inherent authority to refer certain PIP arbitration cases back to the DRP or alternative dispute resolution forum, in instances where additional fact-finding or other decision-making on unresolved material issues is necessary. Before we address that question, we provide, for context, a summary of the relevant facts and procedural history in the two companion appeals.

### Pickell (A–1902–11)

On or about April 20, 2007, Roy J. Pickell, plaintiff in A–1902–11, was involved in a motor vehicle accident. Pickell thereafter sought and received medical treatment for injuries, which he alleges were a direct and proximate result of that accident.

Pickell submitted claims for payment to his automobile insurer, defendant Travelers Auto Insurance Company ("Travelers"), under the PIP provision in his private passenger policy, seeking medical expense benefits and reimbursements for treatment allegedly related to the accident. Travelers initially made certain payments to Pickell, but then stopped doing so. The unpaid expenses that remain at issue include $133,337.72 for various prescription medications, as well as medical deductibles that Pickell paid to Garden State Pain Control and another $1,495.86 he paid to an orthopedist.

In January 2010, as a result of Travelers' refusal to cover Pickell's disputed medical expenses, Pickell filed a demand for arbitration against Travelers with the NAF, now known as Forthright. In his arbitration demand, Pickell requested reimbursement for the unpaid bills, the payment of future expenses, and pre-certification for recommended knee replacement surgery. Among other things, Travelers specifically disputed the sizeable prescription payments, based on its contention that the benefits sought lacked a causal relationship to the subject accident.

On May 10, 2011, an arbitration hearing was conducted before the DRP assigned by Forthright. After the DRP considered the matter, a letter of award was mailed to the parties with his

decision, relieving Travelers of liability under PIP to pay for the requested medical expenses. Among other things, the letter of award summarized Travelers' reasons for disputing causation, noting Travelers' reliance upon a report submitted by an expert physician, who opined that none of Pickell's treatment proposals were related to the subject accident.

The DRP did not, however, make any determination on the causation issue. Rather, the DRP based his decision solely on a finding of misrepresentation by Pickell, the insured. In particular, the DRP noted Pickell had produced pharmacy records reflecting overlapping prescriptions for the same drugs seemingly provided to him by two different physicians. As the DRP noted in his decision:

> I have carefully reviewed the proofs submitted in this matter and have considered the arguments of counsel and I find that respondent [Travelers] has proven by a preponderance of the evidence that ... claimant [Pickell] did, in fact, misrepresent material facts concerning the prescribing of and the obtaining of prescription medication, the bulk of which constitutes the basis for the within claim. Therefore, this precludes the claimant from recovering any part of his claim and the claims pressed herein are denied in their entirety.

Because the DRP rested his analysis entirely upon a finding of the insured's misrepresentation, he did not reach the other contested issues in the matter, including causation.

After receiving the DRP's adverse decision, Pickell filed a verified complaint and order to show cause in the Chancery Division, seeking to vacate the award in its entirety pursuant to *N.J.S.A.* 2A:23A–13. Through his counsel, Pickell further requested to have the court schedule the matter for a hearing to consider testimony and other evidence "and make an independent determination of the facts relevant thereto de novo as it may determine in a summary expedited proceeding[.]" Pickell argued, in relevant part, that there was no actual overlap in the filled prescriptions and that he therefore did not make any fraudulent misrepresentations to Travelers.

The order to show cause was argued before Hon. John A. Peterson, Jr., J.S.C. Upon considering the parties' arguments and

the written submissions, Judge Peterson concluded that Travelers' claims of misrepresentation and prescription abuse by Pickell were unfounded. In particular, the judge found that the left margin on one of the prescription logs provided by Pickell to Travelers had been cut off during its reproduction. The cut-off document incorrectly seemed to indicate that certain prescriptions had been provided to Pickell during the months of January and February of 2008, when, in fact, a complete copy of the documents showed that those drugs were actually prescribed in November and December of 2008. The correctly-copied documents thus conclusively refuted Travelers' earlier claims of misrepresentation and prescription abuse. Given this photocopying glitch, Judge Peterson concluded that the DRP's award had been based upon erroneous facts.[5]

At oral argument before Judge Peterson, Travelers did not dispute, in light of the corrected photocopies, that the arbitration award had been erroneous and should be vacated. Instead, Travelers contended that, upon the court vacating the DRP's award, the appropriate process would be to remand the matter back to Forthright for a new hearing before a DRP on the merits. Conversely, Pickell's counsel argued that the trial court was constrained to retain its jurisdiction and to adduce additional proofs itself, pursuant to *N.J.S.A.* 2A:23A–13(b).

Ultimately, Judge Peterson vacated the award in its entirety, concluding that:

> [I]n applying [*N.J.S.A.* 2A:23A–13] in conjunction with the Forthright rules, the [c]ourt looks at *N.J.S.A.* 2A:23A–13(c) and certainly subsection (5) [i.e., *N.J.S.A.* 2A:23A–13(c)(5) ] without a doubt applies herein and that reads that, "The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternate resolution."
>
> There's no question whatsoever about this individual's . . . misapplying the law to the issues and the facts. That is a given. It's virtually conceded herein.
>
> . . . .

---

[5] Notably, Travelers has not appealed this determination.

> [W]ith the [c]ourt having reviewed the statutory parameters as well as the Forthright rules and finding that *subsection (5) [of N.J.S.A. 2A:23A–13(c)] clearly has been established, a remand is the appropriate relief before this [c]ourt.*
>
> [Emphasis added.]

On September 30, 2011, an order memorializing Judge Peterson's decision was entered. The order specified that (1) the matter be remanded to Forthright, (2) Forthright set the matter down for an arbitration hearing to occur on an expedited basis, and (3) Forthright was precluded from assigning the case to the same DRP, given his overturned prior ruling.

Pickell's counsel forwarded the trial court's order to Forthright, requesting that Forthright, as judicially directed, schedule the arbitration hearing. Instead, Forthright filed a motion to intervene as of right pursuant to *Rule* 4:33–1, seeking to vacate "that part of the order of September 30, 2011 ... directing a 'remand' to Forthright[.]"

At the outset of oral argument on Forthright's motion, Judge Peterson stated that:

> The remand ... was in accord with the [c]ourt's findings that the prior PIP award must be vacated *under [subsection] (5) of N.J.S.A. 2A:23A–13[ (c)]* and that is prejudicial error in applying the law to the facts.
>
> [Emphasis added.]

During oral argument, Judge Peterson expanded the grounds upon which he had vacated the arbitration award, stating:

> [Subs]ection (5) [of *N.J.S.A.* 2A:23A–13(c)] applies [here,] albeit ... this [case] has a somewhat unique fact pattern which doesn't neatly fit on all fours with either subsections (3) or (5).
>
> The [c]ourt has reviewed on its own all of the facts, all of the submissions and arguments of both sides ... and again *finds subsection (5) does best apply; however, subsection (3) [N.J.S.A. 2A:23A–13(c)(3)] also seemingly applies.*
>
> ....
>
> This [c]ourt having read, reviewed and considered the entire record once again and in reconsidering same on its own or in conjunction with the more limited reconsideration argued by Forthright does indeed also find that [*N.J.S.A.* 2A:]23A–13(c)(3) would apply. That being so, *the [c]ourt does find [subsection] 13(c)(5) as being the more applicable appropriate finding under the statute.*
>
> [Emphasis added.]

Based upon this statutory analysis, Judge Peterson denied Forthright's application to vacate the court's remand order, memorializing that decision in a second order dated December 9, 2011. In so holding, the judge based his decision on two primary grounds. First, the judge agreed with Travelers that, in light of the court's determination to vacate the award under *N.J.S.A.* 2A:23A–13(c)(5), a remand was warranted because the DRP did not make necessary findings of fact in his decision concerning unresolved issues such as causation:

> There are no applicable facts [on the causation issue] determined by this [DRP.]
> . . .
>
> There [were] no facts determined [by the DRP] that this [c]ourt can utilize. It's the very heart of the DRP's finding. It was based on documents which were cut off, i.e., the Future Pharmacy records. That was so intrinsically interwoven with the entire finding of the DRP that no findings were made.
>
> . . . .
>
> [T]he [c]ourt agrees with the position of Travelers' counsel that *in the legislative scheme under the facts and procedures of this specific case as found by the [c]ourt where there are no salvageable facts existing from the DRP, an entire new hearing is necessary. [Otherwise, t]here would indeed be a gap in the legislative scheme.* An entirely new hearing is necessary. That's especially so if the sole basis of the [c]ourt's determination [was] to vacate the DRP award in its entirety under [*N.J.S.A.* 2A:]23A–13(c)(5).
>
> [Emphasis added.]

In addition, Judge Peterson reasoned that certain language within a related portion of the APDRA, *N.J.S.A.* 2A:23A–14 ("Section 14"), fortified his decision to remand the matter back to Forthright. Specifically, Section 14, which is entitled "Rehearing, confirmation," recites that:

> *Upon vacating an award pursuant to [S]ection 13, except for the reasons stated in paragraph (5) of subsection c. of [S]ection 13, the court may order a rehearing and determination of all or any of the issues, either before the same umpire, having due regard for whether the award was vacated by reason of the actions of the umpire which were violative of paragraph (1), (2), (3), or (4) of subsection c. of [S]ection 13 or before a new umpire* appointed in accordance with the alternative resolution agreement of this act. Time, in any provision limiting the time for a rehearing or an award, shall be measured from the date of the order or rehearing, whichever is appropriate, or from a time as may be specified by the court. Upon denial of a motion to vacate or modify, the court to which the application for that relief is directed shall confirm the award.
>
> [*N.J.S.A.* 2A:23A–14 (emphasis added).]

Judge Peterson determined that, insofar as his remand order alternatively relied upon subsection (c)(3) of Section 13, the "rehearing" language in Section 14 supported a remand to the arbitral forum.

Forthright now appeals from the trial court's September 30, 2011 and December 9, 2011 remand orders in *Pickell.* In essence, Forthright maintains that the trial court has no authority to compel it to reopen a PIP arbitration and make additional findings of fact. Forthright argues that the trial court instead must conduct a hearing and make those findings itself.

Travelers disagrees with Forthright's position, arguing that the statutes and regulations must be construed sensibly to authorize the trial court to remand the case to the arbitral forum, at least in this setting where the DRP failed to make factual findings on critical issues that now must be resolved in light of the court's order vacating the arbitrator's decision. Pickell, meanwhile, acknowledges that a factual record needs to be developed, but expresses a preference that the fact-finding be performed at this juncture by a trial court rather than by a DRP assigned by Forthright.

### *Kimba Medical Supply/Galeano (A-1443-11)*

On December 11, 2008, Carlos Galeano ("Galeano") was involved in an automobile accident while he was a passenger in a motor vehicle operated by Damilca Tavarez Gonzalez ("Gonzalez"). As a result of injuries he allegedly sustained in that accident, Galeano was provided with an Electric Muscle Stimulation ("EMS") unit from Kimba Medical Supply ("Kimba").

Galeano did not maintain automobile insurance of his own. However, the Gonzalez vehicle in which he had been a passenger was covered by a policy issued by defendant Allstate Insurance Company of New Jersey ("Allstate") to Gonzalez. Thus, Galeano was insured as a guest passenger by Allstate. Importantly, the Allstate policy initially selected by Gonzalez in 2003 was a "Basic" policy with $15,000 in PIP benefits. *See N.J.S.A.* 39:6A-3.1

(delineating the reduced level of coverage alternatively provided under a Basic policy, as contrasted with a "Standard" policy issued under *N.J.S.A.* 39:6A–3 and –4).

After Galeano assigned his PIP benefits to Kimba, Kimba submitted to Allstate the bills for the EMS unit it had provided to Galeano. Allstate, however, refused to reimburse Kimba for the costs it incurred in providing Galeano with that unit because it contended that Gonzalez's PIP coverage had been exhausted.

Thereafter, on February 2, 2010, Kimba, as an assignee of Galeano, filed a demand for arbitration with Forthright's affiliate or predecessor, the NAF, against Allstate seeking payment for the medical expenses it provided to Galeano in the amount of $1,665.65.

Allstate answered Kimba's claim by arguing that the $15,000 in PIP coverage afforded by Gonzalez's Basic policy had been exhausted prior to Kimba filing its claim. Kimba, however, responded by arguing that Gonzalez, in order to maintain Basic coverage, was required to sign and return to Allstate a "coverage selection form" indicating her desire to maintain such coverage each time she renewed her policy, and that her failure to do so meant that her coverage reverted to a Standard policy, which affords its insureds $250,000 in PIP coverage, rather than only $15,000. *See* *N.J.S.A.* 39:6A–3.1(a) and –4(a). In addition, Kimba argued that Standard, not Basic, policy limits apply in these circumstances to guest passengers such as Galeano.

Both Kimba and Allstate presented their proofs before a DRP assigned by Forthright. Following an oral hearing, the DRP issued an award in favor of Kimba, reasoning that the higher $250,000 Standard PIP coverage limit applied because Gonzalez had not signed additional coverage selection forms when she annually reviewed her policy. Based upon this reasoning, the DRP found that the applicable PIP policy limits of $250,000 had not been exhausted. Accordingly, on April 4, 2011, the DRP entered an award in favor of Kimba for $1,665.65, plus interest, costs, and attorney's fees.

Following this award, Allstate filed an internal appeal to a panel of three DRPs within Forthright.[6]  On July 26, 2011, the internal panel vacated the first DRP's award, reasoning that it was unnecessary for Gonzalez to have signed a coverage selection form each renewal year in order for the $15,000 Basic PIP coverage limits to continue in force.

Seeking judicial review of this ruling, Kimba filed a verified complaint and order to show cause in the Law [7] Division.  Kimba requested to vacate the determination of the DRP panel and to confirm the initial award of the DRP "and award all medical expenses demanded as medically necessary, reasonable, and causally related to the motor vehicle accident, or in the alternative, order [Forthright] to schedule a new hearing before [the DRP] to decide the issues not addressed in the award."  The order to show cause sought relief by way of a summary action pursuant to *Rule* 4:67–1 and *N.J.S.A.* 2A:23A–13.

Kimba's complaint not only named Allstate as a defendant, but also named Forthright.  Kimba alleged that Forthright "is an interested party and a company authorized to conduct alternative dispute resolutions by the Department of [Banking and] Insurance throughout the State of New Jersey pursuant to *N.J.S.A.* 39:6A–1 *et seq.*"  Forthright filed opposing papers, contending that the trial court had no authority to issue relief against it, and that Kimba's inclusion of Forthright as a defendant was frivolous.

The matter was argued in the trial court before Hon. Francis J. Orlando, A.J.S.C. At the outset of the hearing, Judge Orlando asked Kimba's counsel why Forthright was a party to the case, and the following exchange took place:

[Kimba's Counsel]: [U]ltimately, Your Honor, because if you are to vacate, and remand, they would then seek post[-]order relief to say you can't remand it.  So, I

---

[6] It is unclear why Pickell did not similarly pursue such an internal appeal before a three-arbitrator panel within Forthright.

[7] We do not comment on the propriety of Kimba filing its case in the Law Division as opposed to Pickell filing his case in the Chancery Division.

included them as a defendant, and as a matter of fact they served a notice on me, and [I responded] saying if you're willing to stipulate that the judge has the authority, if needed, to remand back to Forthright, I'd be more than happy to withdraw them. They are clearly an interested party as they have an interest in whether they're going to oppose your order post-relief.

[The Court]: Okay.

[Kimba's Counsel]: *Which they've done on a routine* [8] *basis.*

[Emphasis added.]

In evaluating the issues, Judge Orlando substantially agreed with portions of the internal DRP panel's analysis. As he explained:

Claimant [Kimba] argues that the respondent has not shown that the coverage was actually exhausted through proper payment of medical expenses. Claimant also argued that respondent was required to obtain signed coverage selection from the insured for each renewal, otherwise coverage would revert to a [s]tandard policy, which has . . . [$]250,00[0] in PIP coverage.

Further, claimant argued that [S]tandard policy limits applied to [a] guest passenger.

. . . .

Getting to the analysis[,] I find that the [original DRP's] interpretation of the . . . statutory scheme is incorrect. [*N.J.S.A.*] 39:6A–3.1 provides that as an alternative to the mandatory coverages provided in Sections 3 and 4, any owner, or register of an automobile registered, or principally garaged in the state may elect a [B]asic automobile insurance coverage[.] . . .

Section 3.2 [of *N.J.S.A.* 39:6A] provides that all automobile insurance policies issued, or renewed after the effective date of Public Law 1998, Chapter 21 shall be issued or renewed, including at least the coverages required pursuant to Section[s] 3 and 4, unless the named insured elects a [B]asic automobile policy pursuant to Section 4, which is [*N.J.S.A.* 39:]6A–3.1, or a special automobile insurance policy.

Election—and my emphasis on the word "election" of a [B]asic insurance policy, or special automobile policy shall be in writing, signed by the named insured on the coverage selection form, required by Section 17 [of *N.J.S.A.* 39:6A].

. . . .

In this particular case it's undisputed that the insured elected, in writing, a [B]asic insurance policy at the inception of the policy. I believe it was 2003. There's been no allegation that the form wasn't the appropriate form mandated by the [C]ommissioner.

. . . .

There is no requirement after the initial signed selection that each coverage selection form shall thereafter be authored.

---

[8] Forthright does not dispute that it routinely opposes such remand orders.

> The [DRP's] conclusion that the statute mandates a signed coverage selection form for a [B]asic policy annually is just not set forth in the statute.
>
> . . . .
>
> So, I find that the $15,000, or [B]asic limit applied in this case, and that the [DRP's] award was wrong, and was properly vacated by the [internal DRP] panel.

Judge Orlando then turned to how the remaining questions in the case should be resolved. He first upheld the DRP panel's finding that the asserted $15,000 policy limit had been exhausted, noting that Kimba had not demonstrated this finding was incorrect. However, the judge did not resolve whether a $15,000 limit should apply to the insured's passenger, because that specific question had not been decided by the DRP or the internal panel:

> The next issue is, what's to be done now?
>
> . . . .
>
> . . . [I]t is acknowledged by the claimant that . . . the issue about *whether a guest passenger is subject to a [S]tandard policy limit[ ], rather than a [B]asic policy,* and its statement that this was not identified as an issue at the hearing is clearly incorrect. The [original DRP] clearly identified . . . it as an issue.
>
> . . . .
>
> So, I find that both the [internal DRP] panel, and the [original DRP] did not properly execute their authority so that a final, and definite award was made. They didn't address this issue. The [original DRP] clearly states that she didn't address it. The [internal DRP panel] clearly is wrong when . . . it says that the claimant had not raised the issue at the hearing.
>
> So, I find . . . pursuant to Section 13[ (c)(3) ] [of *N.J.S.A.* 2A:23A] that both the [original DRP], and the [internal DRP panel] . . . imperfectly executed their authority so that a final, and definite award was not made.
>
> Pursuant to [*N.J.S.A.* 2A:23A–14], I am *remanding this back to the NAF* to assign this to whatever [DRP], in accordance with the rules, to address this issue[.]
>
> . . .
>
> . . . .
>
> I think the . . . position argued by [the] NAF [—that *N.J.S.A.* 2A:23A–14 does not apply to PIP arbitration disputes—] *does not make practical sense. It offends* the notions of judicial economy, and goes against *the whole underlying philosophy for efficiency, and economy in these arbitration proceedings.*
>
> To have [DRPs] not address issues, and then say that the [c]ourt is to conduct some sort of a hearing to address them seems to me *inconsistent with the statutory scheme developed* by the [L]egislature.
>
> [Emphasis added.]

On November 14, 2011, Judge Orlando entered an order memorializing his decision. The order provided, in pertinent part, that

the "arbitration award ... is hereby vacated." It further required that Forthright "schedule a new hearing before the [DRP] to decide the remaining issue of whether the Basic policy coverage of the insured applies to the guest passenger [Galeano] and any medical expenses that should be awarded related to the motor vehicle accident of December 11, 2008[.]"

Forthright now appeals Judge Orlando's remand order, arguing—as it had in *Pickell*—that the trial court has no authority to remand a matter to a Forthright DRP for additional findings. Kimba, meanwhile, has filed a cross-appeal contesting the merits of Judge Orlando's legal determination concerning the insured's Basic $15,000 PIP limits for the renewal policy. Notably, Allstate has not sought relief from the judge's ruling. Neither Kimba nor Allstate object to the trial court remanding the open issue to a DRP.

## II.

### A.

Preliminarily, we consider whether this court should exercise jurisdiction over these two appeals, now that these PIP arbitration awards have already been reviewed by a trial judge. None of the parties have a statutory right to this court's appellate review arising out of an arbitration heard under the special procedures of the APDRA. As we have noted, the APDRA specifies that "[u]pon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered by the [trial] court in conformity therewith and be enforced as any judgment or decree." *N.J.S.A.* 2A:23A–18(b). "There shall be no further appeal or review of the judgment or decree." *Ibid.*

The statute's "no further appeal or review" language, however, is subject to a judicially-recognized caveat. As the Supreme Court instructed in *Mt. Hope*, although voluntary arbitration is a favored procedure, there may be " 'rare circumstances' grounded in public policy" that may warrant "limited appellate review" over

trial court decisions in APDRA matters. *Mt. Hope, supra,* 154 *N.J.* at 152, 712 *A.*2d 180 (quoting *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.,* 135 *N.J.* 349, 364–65, 640 *A.*2d 788 (1994)). This residual appellate review function, although it is to be exercised sparingly, stems from the Supreme Court's ultimate "supervisory function over the courts." *Ibid.*

For example, in *Allstate Insurance Co. v. Sabato,* 380 *N.J.Super.* 463, 471–74, 882 *A.*2d 972 (App.Div.2005), we selectively exercised our appellate oversight based on this public policy exception, in setting aside a trial court's decision reducing counsel fees incurred by a claimant in a PIP arbitration. We chose in *Sabato* to exercise our prerogative to review that fee issue, despite the non-appealability language in Section 18 of the APDRA, because "the reasonableness of counsel fees comes within our exclusive supervisory powers" as an appellate court. *Id.* at 474, 882 *A.*2d 972;[9] *cf. Allstate N.J. Ins. Co. v. Neurology Pain Assocs.,* 418 *N.J.Super.* 246, 258–62, 13 *A.*3d 390 (App.Div.2011) (holding that the courts should not conduct judicial review of interim actions taken by a DRP regarding a still-pending PIP dispute resolution proceeding).

■ We similarly exercise our prerogative of supervisory appellate review in the two cases before us. We do so for several reasons.

First, the fundamental question of the trial court's authority to remand open questions to DRPs in PIP matters is a recurring issue that has yet to be resolved in a published opinion. Several appeals by or involving Forthright on that core jurisdictional question have previously been filed with our court, resulting only in unpublished decisions. There is therefore a need for procedural clarity in this context.

---

[9] By contrast, we declined in *Sabato* to review a separate issue concerning the vacated findings of the insurer's bad faith. *Id.* at 472–73, 882 *A.*2d 972.

Second, the respective institutional functions of the trial court and the arbitration forum implicate systemic boundaries that should not be guessed at by the participants from case to case. The repeat players in the PIP system—claimants, insurers, DRPs, lawyers, and trial judges—all can benefit from definitive precedential guidance as to whether, and if so, when, a PIP matter can be remanded from the trial court to a DRP.

Third, as our foregoing discussion in Part II(B), *infra*, reflects, the statutory scheme is somewhat vague and complicated with respect to the authority for remands. The unsettled questions of statutory interpretation invite judicial attention, and perhaps also the attention of the Legislature or the Commissioner if the approach we adopt in this case is deemed unsatisfactory for policy reasons.

Consequently, we invoke the limited public policy exception recognized in *Mt. Hope* and consider the substance of the jurisdictional issues raised on appeal. In doing so, we stress that our choice to review these discrete issues is confined to the special jurisdictional context before us, and should not invite routine requests for appellate review in other PIP arbitration cases.

### B.

In establishing alternative dispute mechanisms for PIP disputes, the State aimed to incorporate the benefits of the APDRA, which itself was designed to " 'create a new procedure for dispute resolution which provides a speedier and less expensive process for resolution of disputes than traditional court litigation.' " *Neurology Pain Assocs., supra,* 418 *N.J.Super.* at 259, 13 *A.*3d 390 (quoting *Mt. Hope, supra,* 154 *N.J.* at 145, 712 *A.*2d 180). "Any dispute regarding the recovery of medical expense benefits or other benefits provided under [PIP] coverage ... may be submitted to [such] dispute resolution on the initiative of any party to the dispute[.]" *N.J.S.A.* 39:6A–5.1(a).

When adopting administrative rules to implement this alternative dispute resolution process, *see generally N.J.A.C.* 11:3–5.1

through –5.12, the Commissioner endeavored to create "a fair, effective and efficient system of resolving PIP disputes ... in order to carry out the Legislature's intent to revise the [previously-existing] PIP arbitration system[.]" *30 N.J.R.* 3359(a) (Sept. 21, 1998) (rule proposal). As a model for such an alternative system, the Commissioner expressly looked to "*N.J.S.A.* 2A:23A–1 *et seq.*," i.e., the APDRA as a whole, as well as the New Jersey Arbitration Act, *N.J.S.A.* 2A:24–1 to –11, because those statutes, as supplemented by the insurance laws, "provide a solid legal foundation upon which to develop an alternate dispute resolution system for controversies arising out of the PIP coverage in automobile insurance contracts." *Ibid.*

The procedural rules adopted for the conduct of PIP dispute resolution, *N.J.A.C.* 11:3–5.6, limit the judicial reviewability of a PIP arbitrator's decision. Specifically, as we have noted, *N.J.A.C.* 11:3–5.6(f) prescribes that a DRP's final determination "shall be binding upon the parties, but subject to clarification/modification and/or appeal as provided by the rules of the dispute resolution organization, and/or vacation, modification or correction by the Superior Court in an action filed pursuant to *N.J.S.A.* 2A:23A–13 for review of the award." The history of this regulation is unfortunately silent on the jurisdictional authority of a trial judge to remand unresolved issues to a DRP.[10]

The regulation's silence on the critical issue before us prompts us to examine the text of the APDRA itself, particularly Sections 13 and 14. *N.J.S.A.* 2A:23A–13 to –14. As we have indicated, Section 13 recites five limited grounds for vacating an umpire's award:

---

[10] The only references within the *New Jersey Register* concerning *N.J.A.C.* 11:3–5.6 relate to concerns expressed through the public comment process that the review provision might undermine the binding nature of a DRP's award, or might preclude an internal appeal process in the dispute resolution forum. The agency's response clarified that neither impact was intended by the regulation. *See* 30 *N.J.R.* at 4441(a) (Dec. 21, 1998) (rule adoption).

c. The award shall be vacated on the application of a party who either participated in the alternative resolution proceeding or was served with a notice of intention to have alternative resolution if the court finds that the rights of that party were prejudiced by:

(1) Corruption, fraud or misconduct in procuring the award;

(2) Partiality of an umpire appointed as a neutral;

(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;

(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or

(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.

These grounds for judicially setting aside an award generated in the dispute resolution process are plainly restrictive. *See Mt. Hope, supra,* 154 *N.J.* at 149, 712 *A.*2d 180 (observing that "limited judicial review is a central component of the APDRA"); *see also Weinstock v. Weinstock,* 377 *N.J.Super.* 182, 189, 871 *A.*2d 776 (App.Div.2005) (same).

The review procedures adopted in the APDRA are derived from an assortment of legislative sources, including the New Jersey Arbitration Act, *N.J.S.A.* 2A:24–7 to –8; Section 12 and 13 of the Uniform Arbitration Act, 7 *U.L.A.* §§ 12–13; and portions of the New York Civil Practice Law and Rules, *N.Y.C.P.L.R.* § 7511. As the "Draftsman's Legislative History" to Section 13 of the APDRA indicates, the drafters essentially pursued a "pick-and-choose" approach in consulting these other codes, selectively extracting phrases and concepts from each of them.[11] Notably, the APDRA's legislative history omits any external source or model for three of

---

[11] The Draftsman's Legislative History, *reprinted at N.J.S.A.* 2A:23A–13, specifically notes that subsection 13(a) of the APDRA was derived from *N.J.S.A.* 2A:24–7 to –8, *N.Y.C.P.L.R.* § 7511, and 7 *U.L.A.* § 12(b); subsection 13(c)(1) was derived from 7 *U.L.A.* § 12(a)(1); subsection 13(c)(2) was derived from 7 *U.L.A.* § 12(a)(2); subsection 13(c)(3) was derived from 7 *U.L.A.* § 12(a)(3); subsection 13(c)(4) was derived from 7 *U.L.A.* § 12(a)(4); subsection 13(d) was derived from *N.Y.C.P.L.R.* § 7511(b)(2); subsection 13(e)(1) was derived from 7 *U.L.A.* § 13(a)(1); subsection 13(e)(2) was derived from 7 *U.L.A.* § 12(a)(2); subsection 12(e)(3) was derived from 7 *U.L.A.* § 13(a)(3).

the critical provisions in Section 13 at issue in this appeal, specifically subsections 13(b), (c)(5), and (f).

In several respects, Section 13 of the APDRA treats an application to vacate or modify an umpire's award under subsection 13(c)(5) differently than it does under subsections 13(c)(1) through (4). For one thing, subsection 13(b) requires the trial court, when considering an application to vacate or modify an umpire's award on the grounds recited in subsections 13(c)(1) through (4), to:

> *make an independent determination of any facts relevant thereto de novo, upon such record as may exist or as it may determine in a summary expedited proceeding* as provided for by rules adopted by the Supreme Court for the purpose of acting on such applications.
>
> [*N.J.S.A.* 2A:23A–13(b) (emphasis added).]

This language calling for the trial judge's de novo review, either "upon such record as may exist" or in a "summary expedited proceeding" in the Superior Court, does not cover motions to vacate or modify an award challenged under subsection 13(c)(5). Instead, the statute directs in subsection 13(f) a different approach for subsection 13(c)(5) matters, involving an allegation that the umpire "committ[ed] prejudicial error by erroneously applying law to the issues and facts presented":

> f.  Whenever it appears to the court to which application is made, pursuant to this section, either to vacate or modify the award because the umpire committed prejudicial error in applying applicable law to the issues and facts presented for alternative resolution, *the court shall, after vacating or modifying the erroneous determination of the umpire, appropriately set forth the applicable law and arrive at an appropriate determination under the applicable facts determined by the umpire.* The court shall then confirm the award as modified.
>
> [*N.J.S.A.* 2A:23A–13(f) (emphasis added).]

The problem, as the trial judges in the matters before us aptly recognized, is that in some instances—because of the limited breadth of an umpire's decision—an umpire might not have "determined" what ends up being "the applicable facts" that will enable a final resolution of the dispute on its merits.

For example, here in *Pickell,* the DRP did not reach the disputed factual issues of causation presented by Travelers, because the DRP solely based his denial of PIP benefits upon a

mistaken ruling that *Pickell* had fraudulently obtained duplicative prescriptions. The causation issues, which probably would require factual proofs and expert opinions to resolve, were never addressed by the DRP.

Similarly, in *Kimba,* the DRP did not reach the question of whether the insured's passenger should be bound by a Basic $15,000 PIP coverage limitation because the DRP had concluded (mistakenly, as it turns out) that the insured's policy had a $250,000 PIP limit. Although that open issue of passenger coverage in *Kimba* is less credibility-dependent than the open causation issue in *Pickell,* it is clearly an unresolved question outside the scope of the DRP's original determination.

These circumstances demonstrate, as Judge Peterson rightly noted, that Section 13 has a "gap," by failing to set forth an explicit procedure to deal with situations, as here, where an umpire or DRP has not developed a suitable record upon which a trial court can make an appropriate ruling. We now consider how to deal best with that apparent gap.

■ Forthright argues that the trial court is obligated to conduct an independent summary proceeding, in the manner called for under subsection 13(b) of the APDRA. It questions whether subsection 13(c)(5)—pertaining to instances of an umpire's "prejudicial error" in "erroneously applying law to the issues and facts presented"—is even implicated in these cases. If subsection 13(c)(5) is indeed implicated, Forthright maintains that the trial court is powerless to remand the matter back to a DRP to address the open issues. In that regard, Forthright's counsel indicated to us at oral argument that it receives no additional fees for conducting a remand proceeding. Forthright's counsel also contended that remands would interfere with the efficient processing of newer PIP cases.

We derive some insight in resolving this quandary by consulting

the text of Section 14 of the APDRA.[12]   As we have already noted, that provision states, in pertinent part:

> Upon vacating an award pursuant to [S]ection 13, except for the reasons stated in paragraph (5) of subsection [ (c)] of [S]ection 13, the court may order a rehearing and determination of all or any of the issues, either before the same umpire, having due regard for whether the award was vacated by reason of the actions of the umpire which were violative of paragraph (1), (2), (3), or (4) of subsection [ (c) ] of [S]ection 13 or before a new umpire appointed in accordance with the alternative resolution agreement of this act.
>
> [N.J.S.A. 2A:23A–14 (emphasis added).]

This language in Section 14 authorizes a rehearing before the same or a different umpire, but only "upon" the trial court vacating an award under subsections 13(c)(1) through (4).   Section 14 does not address, however, the propriety of remands to an umpire in situations in which an award has been vacated under subsection 13(c)(5).   Even so, this related portion of the APDRA is instructive in several respects.

First, we note what, at first blush, might appear to be a tension between subsection 13(b)—which prescribes de novo review by judges and, if necessary, the creation of a record in a "summary expedited proceeding" in the trial court—and Section 14, which authorizes situations in which trial judges "may" remand vacated matters to the original or new umpire.   These two provisions may

---

12 We reject Forthright's argument that we cannot consult Section 14 of the APDRA because the PIP regulation, N.J.A.C. 11:3–5.6(f), mentions only "an action filed pursuant to N.J.S.A. 2A:23A–13 for review of the award."   The cited regulation does not preclude reference to the language in Section 14, which is clearly related to Section 13 and should be read in pari materia.   See DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (instructing courts to read statutory provisions "in context with related provisions so as to give sense to the legislation as a whole").   The regulatory history of the PIP regulations that we have already canvassed reflects that, in designing the DRP process for PIP arbitrations, the Commissioner considered the APDRA as a whole and not just an isolated provision within it.   See 30 N.J.R. 3359(a).   Moreover, our case law has already imputed another portion of the APDRA, Section 18, within the PIP alternative dispute resolution process.   See Sabato, supra, 380 N.J.Super. at 471, 882 A.2d 972 (applying Section 18); see also Neurology Pain Assocs., supra, 418 N.J.Super. at 260, 13 A.3d 390 (noting, in the plural, that N.J.A.C. 11:3–5.1(a) "implements provisions of N.J.S.A. 2A:23A–1 et seq." (emphasis added)).

sensibly be harmonized, however, by focusing upon the specific contexts involved.

Subsection 13(b) addresses the discrete context of a judge "*considering* an application for vacation, modification or correction of an award." *N.J.S.A.* 2A:23A–13(b) (emphasis added). In that setting, the judge may need to conduct an evidential hearing in the trial court *in order to decide whether* to vacate or modify an umpire's award. For instance, if a party is claiming under subsection 13(c)(1) that the umpire was corrupted by certain actions in procuring the award, it is advantageous for the trial court to develop and adjudicate the facts concerning that allegation of corruption, rather than having the umpire determine those facts about his or her own alleged behavior.

By comparison, Section 14 is triggered at a later point in the process, arising *after* a judicial determination already has been made to vacate an award. Indeed, the prefatory clause to Section 14 reads, "*Upon vacating* an award pursuant to [S]ection 13 . . . ." *See N.J.S.A.* 2A:23A–14 (emphasis added). The language in Section 14 is discretionary (i.e., "may order a rehearing"), affording the trial court the option of rehearing the case itself or sending it back to the umpire for "a rehearing and determination of all or any of the issues[.]" *Ibid.* This Section 14 procedure provides useful flexibility in assessing whether a remand or rehearing is practically necessary *after* an award has been vacated.

That said, there remains a gap in the statute for dealing with open issues that must be resolved when an umpire's award is vacated under subsection 13(c)(5) and the factual record previously created by the umpire is incomplete. In those discrete and presumably rare circumstances, we construe the statutory scheme to implicitly authorize the trial court, if it so elects, to remand the matter to the umpire for factfinding. We reach that practical conclusion in an effort to attempt to construe the statute in a reasonable and harmonious fashion that attempts to achieve the overall objectives of its framers.[13]

---

[13] *See In re Contest of Nov. 8, 2011 Gen. Election,* 210 *N.J.* 29, 73, 40 A.3d 684 (2012) (instructing that statutory provisions should be read "in a sensible and harmonious way").

As we have noted, the optional procedures for alternative dispute resolution in PIP matters were fashioned to provide an efficient and less-expensive means of determining those cases. Unlike civil actions in the Law Division, discovery in PIP arbitrations is limited, and there are no jury trials. *See, e.g., N.J. Mfrs. Ins. Co. v. Bergen Ambulatory Surgery Ctr.*, 410 *N.J.Super.* 270, 278, 982 *A.*2d 1 (App.Div.2009). The dispute professionals who hear PIP cases have the opportunity to develop and apply their expertise in those high-volume cases, which frequently involve repetitive medical and legal issues. There is no reason to sacrifice those advantages of efficiency, cost savings, and forum expertise by foreclosing remands to PIP arbitrators in appropriate situations. In addition, as Judge Orlando suggested, it is unwise to create incentives for busy DRPs who hear PIP matters to render incomplete decisions that are insulated from the possibility of a remand.

Although civil trial judges certainly have the ability and expertise to hear PIP cases as well, our crowded court dockets do not need the extra burden of accommodating PIP hearings that could readily be completed on remand before a DRP. To the extent that such occasional remands will involve slightly more work for Forthright and its DRPs, perhaps the filing fee schedule approved by the Commissioner can be adjusted to allow Forthright to charge a supplemental fee for such remanded cases. In sum, there is no reason to read the applicable statutes and regulations rigidly and eliminate the remand option.[14]

---

[14] Our conclusion in this regard qualifies a more general statement we made in *Weinstock, supra,* 377 *N.J.Super.* at 189, 871 *A.*2d 776, where we observed that "judicial review of an arbitrator's decision under the APDRA ... is, in the first instance, to be made by the Chancery Division judge, who is required to make the appropriate findings of fact and conclusions of law whether the decision confirms the award as entered, or modifies it or vacates it in whole or in part." We did not have occasion in *Weinstock*, as we do here, to examine the nuances of Sections 13 and 14 of the APDRA as they relate to instances where the umpire's award has been vacated and where the record is incomplete to decide the case.

## C.

Having adopted this interpretation of the APDRA's remand authority, we now apply it to the two cases before us.

■ In *Pickell*, the trial court was faced with a clearly-incomplete record, once the misperception of Pickell's prescription abuse was corrected and the DRP's denial of benefits on that basis appropriately vacated. As we noted, Judge Peterson found both subsections 13(c)(3) and (5) of the APDRA potentially applicable, although he ultimately rested his analysis principally upon subsection 13(c)(5).

We acknowledge that the respective wording of each of those two subsections conceivably applies to this situation. We agree with Judge Peterson that subsection 13(c)(5), involving the DRP's "prejudicial error" in applying the law to the issues and facts, is the more readily applicable basis to set aside the DRP's mistaken ruling in *Pickell*.

In any event, it makes no difference whether the fulcrum of the decision to vacate in *Pickell* is centered upon subsection 13(c)(3) or (5). If the former subsection applies, the court, having vacated the award, has discretion under Section 14 to refer the remaining issues to a DRP for rehearing. If the latter subsection applies, then we must fill the "gap" in Section 13 by authorizing a remand to develop and resolve the causation issue because of the inadequacy of the present record. We therefore affirm the trial court's remand orders in *Pickell*.

■ We reach the same result in *Kimba*, subject to our legal discussion in Part III, *infra*, concerning the PIP coverage limits. In ordering a remand, Judge Orlando relied upon both subsection 13(c)(3) and Section 14 of the APDRA, without resorting to subsection 13(c)(5). His analysis and application of those statutes is logical, although we recognize there is a colorable alternative argument under subsection 13(c)(5) that the DRP in *Kimba* "committed prejudicial error in applying applicable law" by misconstruing the applicable PIP coverage limits.

Having determined, for the reasons we will explore next in Part III, *infra*, that a $15,000 Basic policy limit for PIP coverage applied to the *insured*, Judge Orlando vacated the arbitral determination, because neither the DRP nor the internal DRP review panel ever reached or resolved the question of whether such minimal PIP coverage limits applied to the insured Gonzalez's passenger, Galeano. Because that unresolved issue was not explored on the existing record, the judge possessed the authority, under Sections 13 and 14 of the statute, to remand the issue for determination in the first instance by a DRP. The judge was not, as Forthright argues, obligated to make that determination himself de novo. We therefore affirm the remand order in *Kimba* as well.

### III.

We lastly address Kimba's separate appeal, in which it contends that Judge Orlando erred in concluding that a $15,000 PIP policy limit rather than a $250,000 PIP policy limit applied to the insured, Gonzalez. We agree with Judge Orlando's analysis of that aspect of the coverage question. The policyholder, Gonzalez, elected the cheaper "Basic" automobile coverage when she initially purchased insurance from Allstate in 2003. She duly received and signed, as required by the applicable statute, a coverage selection form at that time. *See N.J.S.A.* 39:6A–3.2(a).

We reject Kimba's contention that Allstate was obligated to obtain Gonzalez's signature on a coverage selection form every time she renewed her annual policy. The regulation cited by Kimba, *N.J.A.C.* 11:3–15.7, calling for a signed coverage selection form, is inapplicable because that provision is confined to "new policies" and limited enumerated "mid-term policy changes." *See N.J.A.C.* 11:3–15.7(a)–(b).

We need not comment upon Kimba's separate argument that the DRP lacked an adequate evidential basis to conclude that the $15,000 Basic PIP coverage limit, if it applies to the passenger, has been exhausted. We decline to exercise our limited review

authority over this issue of coverage exhaustion, as the issue is essentially one of mathematical calculation and does not involve a public policy question warranting our supervisory intervention. *Mt. Hope, supra,* 154 *N.J.* at 152, 712 *A.*2d 180.

## IV.

For these reasons, the trial court's respective orders in A–1443–11 (*Kimba*) and in A–1902–11 (*Pickell*) are consequently affirmed, and the respective cases are remanded to Forthright for a hearing and determination on the open issues that have been identified. We do not retain jurisdiction. Any further review following the completion of the remand to a DRP shall be pursued in the trial court, consistent with the procedures set forth in the APDRA and with our interpretation of the statute expressed in this opinion.

Affirmed.