998 A.2d 523 (2010)
414 N.J. Super. 331
SELECTIVE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant,
v.
Arthur C. ROTHMAN, M.D., Ph.D., P.A., a/s/o D.R., Defendant-Respondent.
Dr. Arthur C. Rothman, a/s/o D.R., Plaintiff-Respondent,
v.
Selective Insurance Company, Defendant-Appellant.
Arthur C. Rothman, M.D., Ph.D., P.A., Plaintiff-Respondent,
v.
Selective Insurance Company of America, Defendant-Appellant.
DOCKET NOS. A-5288-08T3, A-5289-08T3, A-5290-08T3.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 2010.
Decided July 13, 2010.
*524 Gordon S. Graber argued the cause for appellant Selective Insurance Company of America (Sullivan and Graber, attorneys; Mr. Graber, of counsel; Chryzanta K. Hentisz, Morristown, on the brief).
Robert B. Hille argued the cause for respondent Arthur C. Rothman, M.D., Ph. D., P.A. (Kalison, McBride, Jackson & Hetzel, P.C., attorneys; Mr. Hille, of counsel and on the brief; James A. Robertson, Warren, and John W. Kaveney, on the brief).
Joseph M. Ariyan, Fairview, argued the cause for respondent Arthur C. Rothman, M.D., Ph.D., P.A., a/s/o D.R. (Ariyan, Khoury & Schildiner, L.L.P., attorneys; Mr. Ariyan, on the brief).
Harwood Lloyd, L.L.C., attorneys for amicus curiae American Academy of Physician Assistants and The New Jersey State Society of Physician Assistants (Evelyn R. Storch, Newark, on the brief).
Mandelbaum, Salsburg, Gold, Lazris & Discenza, P.C., attorneys for amicus curiae American Medical Association and Medical Society of New Jersey (Dennis J. Alessi, West Orange, and Casey L. Carhart, of counsel and on the brief).
Before Judges RODRÍGUEZ, REISNER and YANNOTTI.
The opinion of the court was delivered by YANNOTTI, J.A.D.
In A-5288-08, Selective Insurance Company of America (Selective) appeals from an order entered by the trial court on June 9, 2009, denying Selective's motion to vacate and modify the arbitration award entered in favor of Dr. Arthur C. Rothman (Rothman). In A-5289-08, Selective appeals from an order entered by the trial court on June 9, 2009, which confirmed the aforementioned arbitration award. In A-5290-08, Selective appeals from a judgment entered by the trial court on June 9, 2009, which declared that physician assistants are permitted to perform needle electromyography (EMG) studies. For the reasons that follow, we reverse.

I.
These appeals arise from the following facts. Rothman is a physician licensed to practice medicine and surgery in New Jersey. Through his professional corporation, Rothman performs electrodiagnostic studies, including EMGs and nerve conduction velocity (NCV) tests. EMG studies involve the study of spontaneous and voluntary chemical activity of muscle, which is performed by the insertion of a needle electrode into the muscle and recording the electrical activity at rest and during voluntary muscle contraction. NCV tests involve the application of electrical stimulation at various points along or near a nerve using surface electrodes for stimulation and recording of data.
*525 D.R. was injured in an auto accident and, on August 27, 2007, electrodiagnostic tests were performed on D.R.'s right upper extremity in Rothman's office. As D.R.'s subrogee, Rothman submitted a claim to Selective for the cost of the tests. The claims were made pursuant to the provisions of the Selective policy and the statute governing payment of personal injury protection (PIP) benefits, specifically N.J.S.A. 39:6A-4(a).
Selective refused to pay the claim. Selective asserted, among other things, that Rothman did not personally perform the needle EMG test. Selective claimed that the test had been performed by Bracha "Beth" Mazin (Mazin), a physician assistant in Rothman's office, and she was not legally authorized to perform the test. The matter was submitted to dispute resolution pursuant to N.J.S.A. 39:6A-5.1.
The Dispute Resolution Professional (DRP) issued a report dated November 28, 2008. He stated that there are two elements of electrodiagnostic testing: "the compilation of data during the test and the interpretation of [that] data with due regard to the clinical presentation and examination of the patient." The DRP found that Mazin had retrieved the data, while Rothman had interpreted the data compiled. The DRP noted that both Rothman and Mazin had signed the test report, thereby acknowledging that they were both involved in the testing process. The DRP found that N.J.S.A. 45:9-5.2(a) did not preclude Mazin from performing the EMG testing "for the compilation of data" that the supervising physician may interpret.
The DRP ordered Selective to pay Rothman's claim, and awarded him attorney's fees and costs. Thereafter, Selective filed a motion with the DRP for modification or clarification of the award. The DRP entered an order dated February 23, 2009, denying the motion. On March 13, 2009, Rothman filed a verified complaint and order to show cause in the Law Division, seeking an order confirming the arbitration award.
On March 13, 2009, Rothman also filed a complaint in the Chancery Division seeking a judgment declaring that physician assistants are legally authorized to perform EMG studies. Among other things, Rothman alleged that Selective had refused to pay about twenty-five to thirty claims for EMG testing on the ground that the tests had been performed by a physician assistant. Rothman sought an order compelling Selective to pay the disputed claims.
On April 15, 2009, the Chancery Division entered an order transferring the declaratory judgment action to the Law Division, where it was considered along with Rothman's application to confirm the arbitration award. On June 8, 2009, the trial court filed a written opinion in which it concluded that physician assistants were legally authorized to perform EMG studies under the supervision of a licensed physician. The court entered orders dated June 9, 2009, confirming the arbitration award in the D.R. matter and granting Rothman the declaratory relief he sought. Selective filed separate appeals from the trial court's orders. We entered an order dated August 31, 2009, granting Selective's motion to consolidate the appeals.

II.
We turn first to Selective's appeal from the judgment entered in the declaratory judgment action. Selective argues that the trial court erred by finding that N.J.S.A. 45:9-5.2(a) does not preclude physician assistants from performing EMG testing.
*526 The statute at issue is N.J.S.A. 45:9-5.2. It provides as follows:
a. A person shall not perform needle electromyography unless that person is licensed to practice medicine and surgery in this State pursuant to chapter 9 of Title 45 of the Revised Statutes.
A person shall not interpret evoked potentials or nerve conduction studies unless that person is licensed to practice: medicine and surgery in this State pursuant to chapter 9 of Title 45 of the Revised Statutes; audiology in this State pursuant to chapter 3B of Title 45 of the Revised Statutes; or chiropractic in this State pursuant to chapter 9 of Title 45 of the Revised Statutes.
b. As used in this act:
"Evoked potential" means the analysis of an electric potential produced by introducing stimuli into the central nervous system for the diagnosis of diseases of the brain, spinal cord and nerves contiguous with them and includes brainstem auditory evoked responses, visual evoked responses and somotosensory evoked potentials;
"Needle electromyography" means the study of spontaneous and voluntary electrical activity of muscle, which is performed by insertion of a needle electrode into a muscle and recording the electrical activity at rest and during voluntary contraction; and
"Nerve conduction study" means the application of electrical stimulation at various points along or near a nerve and usually requires the use of surface electrodes for stimulation and recording.
[N.J.S.A. 45:9-5.2.]
Here, the trial court found that N.J.S.A. 45:9-5.2(a) does not preclude physician assistants from performing needle EMG tests because they are licensed under chapter 9 of Title 45. The court determined that a physician assistant could perform the test and compile the test data so that it could be interpreted by a licensed person who is qualified to do so.
In construing the relevant statutory language, we are guided by certain well-established principles. "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280, 827 A.2d 1040 (2003)). "We ascribe to the statutory words their ordinary meaning and significance[.]" Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313, 129 A.2d 8 (1957)). Furthermore, it is not our function "to `rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)) (alteration in original).
As we stated previously, N.J.S.A. 45:9-5.2(a) provides that a person may not perform needle EMG unless "that person is licensed to practice medicine and surgery in this State pursuant to chapter 9 of Title 45 of the Revised Statutes." To determine the meaning of N.J.S.A. 45:9-5.2(a), we must read the statute along with the statutes that govern the licensing of persons to licensing medicine and surgery and the statutes that govern the practice of physician assistants. St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d 829 (2005) (noting that statutes on the same subject matter should be read in pari materia).
In order to obtain a license "to practice medicine or surgery[,]" an individual must take and pass an examination administered by the Board of Medical Examiners (BME). N.J.S.A. 45:9-6. An individual is *527 permitted to take the exam if he or she graduated from a medical school and, depending upon the year in which the individual graduated, either completed an internship or certain post-graduate training. N.J.S.A. 45:9-8.
Physician assistants are licensed pursuant to the Physician Assistant Licensing Act (PALA), N.J.S.A. 45:9-27.10 to -27.28. To obtain such a license, a person must be at least eighteen years of age, be of good moral character, successfully complete "an approved program;" and pass a "national certifying examination administered by the National Commission on Certification of Physician Assistants, or its successor." N.J.S.A. 45:9-27.13(a).
In addition, the PALA recognizes that physician assistants are not "licensed to practice medicine and surgery[.]" The term "physician" is defined in the PALA as "a person licensed to practice medicine and surgery pursuant to chapter 9 of Title 45 of the Revised Statutes." N.J.S.A. 45:9-27.11. The term "physician assistant" is defined in the PALA as "a person who holds a current, valid license issued pursuant to" the PALA. Ibid.
It is clear, therefore, that physician assistants are not "licensed to practice medicine and surgery" pursuant to chapter 9 of Title 45. They are licensed under chapter 9 of Title 45 to perform certain procedures in their capacity as physician assistants but they are not "licensed to practice medicine and surgery[.]" Accordingly, N.J.S.A. 45:9-5.2(a) precludes physician assistants from performing needle EMG studies, as that term is defined in N.J.S.A. 45:9-5.2(b).
Because we are satisfied that the relevant provisions of N.J.S.A. 45:9-5.2(a) are clear and unambiguous, there is no need to resort to extrinsic evidence to discern the meaning of the statute. DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039. Nevertheless, the pertinent legislative history of N.J.S.A. 45:9-5.2 supports our conclusion that the statute precludes physician assistants from performing needle EMG tests, as defined in the statute.
The statute was enacted as L. 2005, c. 303. The enactment resulted from the passage of similar legislation in the Assembly and Senate: Assembly No. 146 (2004) and Senate No. 188 (2005). The statements of the Senate Health, Human Services and Senior Citizens Committee to Senate No. 188 (2005), and the Assembly Health and Human Service Committee to Assembly No. 456 indicate that, if enacted, the statute would provide "that only a licensed physician may perform" needle EMG tests.
These statements show that the Legislature intended that only certain licensed physicians, specifically those persons "licensed to practice medicine and surgery pursuant to chapter 9 of Title 45[,]" would be permitted to perform needle EMG tests. As we have explained, physician assistants are not "licensed to practice medicine and surgery" because they do not have the qualifications for such a license.
Rothman argues, however, that N.J.S.A. 45:9-27.16(b)(1) authorizes physician assistants to perform needle EMG tests because it permits physician assistants to "assist" a duly licensed person "in the performance of invasive laboratory procedures and related studies[.]" Although the statute may permit a physician assistant to "assist" a duly licensed individual in the performance of certain invasive procedures, it does not authorize a physician assistant to perform these procedures individually.
Indeed, N.J.S.A. 45:9-5.2 indicates that any such assistance could not take the form of inserting the needle electrode into the muscle and recording the electrical *528 activity. Under N.J.S.A. 45:9-5.2(a), only a person licensed to "practice medicine and surgery" can perform that procedure.
Rothman further argues that the BME had exercised its authority under N.J.S.A. 45:9-27.24(b) and adopted a regulation that authorizes physician assistants to perform needle EMG studies. Rothman cites N.J.A.C. 13:35-2B.4(b)(6), which provides that a physician assistant may perform:
other procedures for diagnostic, therapeutic or interventional purposes such as, but not limited to, introduction of contrast material for radiologic studies, use of endoscopic instruments and aspiration of fluid from joints and body cavities, collection of cerebrospinal fluid, biopsy of tissues, placement of central venous catheters or chest tubes, and endotracheal intubation.
However, the regulation does not specifically mention needle EMG tests. Even if it were interpreted to allow physician assistants to perform those tests, the regulation would be inconsistent with N.J.S.A. 45:9-5.2(a).
Rothman also argues that the BME has recognized that physician assistants may perform needle EMGs. In support of this contention, Rothman relies upon certain letters written on behalf of the Physician Assistant Advisory Committee (Committee), which state that physician assistants may perform needle EMG tests. Rothman also relies upon the minutes of the Committee's November 21, 2008 meeting, which state that physician assistants are authorized by N.J.A.C. 13:35-2B.4(b) to perform needle EMG tests. At its meeting on February 11, 2009, the BME approved the minutes of the Committee's meeting.
The Committee is established by N.J.S.A. 45:9-27.20. Its powers and duties are set forth in N.J.S.A. 45:9-27.23. Those powers and duties include the authority to: evaluate and pass upon the qualifications of candidates for licenses; discipline licensees; adopt and administer the licensing exam; adopt standards for continuing education; and "make recommendations to the [BME] regarding any subjects pertinent to this act."
Suffice it to say, the Committee's letters and the minutes of its meeting represent the Committee's own views on the question of whether physician assistants are authorized to perform needle EMG tests. Although the BME approved the minutes of the Committee's November 21, 2008 meeting, we do not interpret that action as formal adoption of the Committee's opinion on this legal issue. However, even if the BME shared the Committee's opinion, its position would be inconsistent with N.J.S.A. 45:9-5.2(a).
Rothman additionally argued in the trial court that his interpretation of the relevant statutes is supported by a letter dated March 18, 2009, from a member of the State Senate. In that letter, the Senator asserted that N.J.S.A. 45:9-5.2 was "never intended" to prohibit physician assistants from performing needle EMG studies under the supervision of a physician. Rothman's reliance on this letter is misplaced. Post-enactment statements of legislators on legislative intent are of limited value in understanding the meaning of a statute. N.J. Coalition of Health Care Professionals, Inc. v. N.J. Dep't of Banking and Ins., 323 N.J.Super. 207, 256, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). The Senator's interpretation of N.J.S.A. 45:9-5.2(a) is inconsistent with the plain language of the statute.
We therefore conclude that the trial court erred by finding that N.J.S.A. 45:9-5.2(a) does not preclude physician assistants from performing needle EMG studies. *529 As we have explained, the statute bars physician assistants from personally inserting "a needle electrode into a muscle and recording the electrical activity at rest and during voluntary contraction[.]" N.J.S.A. 45:9-5.2. Only a person "licensed to practice medicine and surgery" may perform that procedure. Ibid. The trial court erred by concluding otherwise. Accordingly, we reverse the judgment entered for Rothman in the declaratory judgment action.

III.
Selective also appeals from the trial court's order confirming the arbitration award. As stated previously, Rothman asserted a claim, as subrogee of D.R., for PIP benefits under N.J.S.A. 39:6A-4 and the relevant provisions of the Selective policy. After Selective refused to pay the claim, the matter was submitted to dispute resolution pursuant to N.J.S.A. 39:6A-5.1.
The decision of the DRP is "binding upon the parties, but [it is] subject to vacation, modification or correction by the Superior Court in an action filed pursuant to N.J.S.A. 2A:23A-13 for review of the award." N.J.A.C. 11:3-5.6(f). See Coalition for Quality Health Care v. Dep't of Banking and Ins., 348 N.J.Super. 272, 312, 791 A.2d 1085 (App.Div.), cert. denied, 174 N.J. 194, 803 A.2d 1165 (2002).
N.J.S.A. 2A:23A-13 provides that an arbitration award may be vacated if the rights of a party were prejudiced by
(1) Corruption, fraud or misconduct in procuring the award;
(2) Partiality of an umpire appointed as a neutral;
(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;
(4) Failure to follow the procedures set forth in [the New Jersey Alternative Procedure for Dispute Resolution Act, N.J.S.A. 2A:23A-1 to -30], unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or
(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.
When a court confirms, modifies or corrects an award pursuant to this statutory authority, it must enter a judgment reflecting its determination. N.J.S.A. 2A:23A-18(a). "There shall be no further appeal or review of the judgment or decree." N.J.S.A. 2A:23A-18(b).
There are, however, exceptions to the limitations on appellate review in N.J.S.A. 2A:23A-18(b). See Mt. Hope Dev. Assocs., EAJ, Inc. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 152, 712 A.2d 180 (1998). One such limitation is when "public policy would require appellate court review." Ibid.
We are satisfied that the trial court's erroneous determination that physician assistants are authorized to perform needle EMG tests is a matter of significant public concern. As we have explained, the Legislature has unambiguously provided in N.J.S.A. 45:9-5.2(a) that needle EMG tests may only be performed by persons who are licensed to "practice medicine and surgery in this State pursuant to chapter 9 of Title 45[.]"
By ordering Selective to pay Rothman's claim, the DRP failed to enforce the clear mandate of the statute. The trial court erred by confirming the award. Under these circumstances, appellate review of the trial court's order is warranted. Accordingly, *530 we reverse the orders entered by the trial court confirming the award.
Reversed.