NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-0319-17T1
                    A-0388-17T1

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Plaintiff-Respondent,

v.

SPECIALTY SURGICAL CENTER
OF NORTH BRUNSWICK a/s/o
CLAIRE FIORE, and SURGICARE
SURGICAL ASSOCIATES OF FAIR
LAWN a/s/o MARTINO CHIZZONITI,

    Defendants-Appellants.
_____

> **APPROVED FOR PUBLICATION**
>
> **January 29, 2019**
>
> **APPELLATE DIVISION**

Argued December 11, 2018 – Decided January 29, 2019

Before Judges Hoffman, Suter and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-3647-17 and L-4927-17.

Keith J. Roberts and Richard B. Robins argued the cause for appellant Specialty Surgical Center of North Brunswick (Brach Eichler, LLC, attorneys; Keith J. Roberts, of counsel and on the briefs; Richard B. Robins, on the briefs)

Joseph A. Massood argued the cause for appellant Surgicare Surgical Associates of Fairlawn (Massood

Law Group, LLC, attorneys; Joseph A. Massood, of counsel and on the briefs; Tara M. McCluskey, on the briefs).

Gregory E. Peterson argued the cause for respondent (Dyer & Peterson, PC, attorneys; Gregory E. Peterson, on the brief).

Susan Stryker argued the cause for amicus curiae Insurance Council of New Jersey and the Property Casualty Insurers Association of America (Bressler, Amery & Ross, PC, attorneys; Susan Stryker, of counsel and on the briefs; Michael J. Morris, on the briefs).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

In these back-to-back appeals involving automobile insurance, which we now consolidate for purposes of this opinion, defendants appeal from Law Division orders vacating binding arbitration awards entered in their favor against plaintiff New Jersey Manufacturers Insurance Company (NJM). In both cases, the trial court held the PIP[1] medical fee schedule does not provide for payment to an ambulatory surgical center (ASC) for procedures not listed as reimbursable when performed at an ASC. We affirm.

---

[1] PIP refers to personal injury protection coverage, which auto insurers must provide in "every standard automobile liability insurance policy." N.J.S.A. 39:6A-4.

I.

N.J.S.A. 39:6A-4.6(a) requires the Department of Banking and Insurance (the Department) to "promulgate medical fee schedules on a regional basis for the reimbursement of health care providers . . . for medical expense benefits . . . under [PIP] coverage . . . ." These fee schedules shall "incorporate the reasonable and prevailing fees of [seventy-five percent] of the practitioners within the region." Ibid. To comply with this statutory mandate, the Department promulgated new regulations and amendments to N.J.A.C. 11:3-29.

N.J.A.C. 11:3-29.5(a) states, "ASC facility fees are listed in Appendix, Exhibit 1[2] by CPT[3] code. Codes that do not have an amount in the ASC facility column are not reimbursable if performed in an ASC." The Fee Schedule has three columns relevant to the instant matter: one column lists CPT codes and two columns list corresponding ASC fees, "ASC Fees North"

---

[2] Exhibit 1 is titled "Physician's & Ambulatory Surgical Center (ASC) Facility Fee Schedule" (the Fee Schedule).

[3] CPT stands for Current Procedural Terminology.

and "ASC Fees South." The Fee Schedule does not list CPT code 63030 as a code eligible for reimbursement for physicians or ASCs.[4]

In the first case, Claire Fiore, an NJM insured, sustained injury to her lower back in a May 2014 accident involving an automobile. In November 2015, Fiore underwent a lumbar discectomy at the ASC operated by defendant Specialty Surgical Center of North Brunswick (Specialty Surgical). Following the procedure, Specialty Surgical sought $32,500 in reimbursement from NJM under CPT code 63030; however, NJM denied payment, claiming the treatment was not medically necessary and further asserting "the CPT code charged by the facility – 63030 – had no reimbursement value for the ASC on the [F]ee [S]chedule."

In the second case, Martino Chizzoniti also sustained injury to her lower back in a May 2014 accident involving an automobile. In November 2015, Chizzoniti underwent lumbar decompression surgery at an ASC operated by defendant Surgicare Surgical Associates of Fair Lawn (Surgicare). Following the procedure, Surgicare sought $49,000 in reimbursement under Chizzoniti's PIP coverage with NJM for the procedure under CPT code 63030; however,

---

[4]  CPT code 63030 does appear in Exhibit 7 of the Appendix, which lists "hospital outpatient facility fees." N.J.A.C. 11:3-29.5(b).

NJM denied reimbursement because "the CPT code charged by the facility – 63030 – had no reimbursement value for the ASC on the [F]ee [S]chedule."

In each case, the ASC filed a demand for arbitration with Forthright, Inc. (Forthright),[5] and the parties proceeded to binding arbitration pursuant to N.J.A.C. 11:3-5.1(a) and the PIP endorsement in NJM's policy. After a Forthright DRP and a Forthright appellate panel found against NJM in each case,[6] NJM filed Law Division actions seeking to vacate each award under N.J.S.A. 2A:23A-13 of the Alternative Procedure for Dispute Resolution Act (APDRA),[7] alleging the awards resulted "from an erroneous and prejudicial application of the law to the facts." On August 14, 2017, the trial court filed a final order and written decision in each case, vacating each award and holding that the ASC "shall receive no reimbursement, of any kind[,] in connection with [ASC] fees for CPT code 63030" for the surgical procedure in each case. These appeals followed.

_____

[5]  Forthright is "the organization that contractually provides the State with [Dispute Resolution Professionals (]DRPs[)] who hear PIP matters . . . ." Kimba Med. Supply v. Allstate Ins. Co., 431 N.J. Super. 463, 467 (App. Div. 2013).

[6]  In the Fiore case, the panel affirmed an award of $25,500 in favor of Specialty Surgical, and in the Chizzoniti case, the panel affirmed an award of $13,940.72 in favor of Surgicare.

[7]  N.J.S.A. 2A:23A-1 to -30.

We first address the applicable jurisdictional constraint set forth in the APDRA. Pursuant to N.J.S.A. 2A:23A-13, a party seeking to vacate, modify, or correct an award may bring "a summary application" in the trial court. According to the statute, that judicial scrutiny by the trial court should constitute the final level of appellate review. N.J.S.A. 2A:23A-18(b) provides that "[u]pon the granting of an order confirming, modifying[,] or correcting an award, a judgment or decree shall be entered by the [trial] court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree." (Emphasis added).

Based on the explicit language in the statute, "appellate review is generally not available" to challenge a trial judge's order issued in cases arising under the APDRA; however, "there are exceptions." Morel v. State Farm Ins. Co., 396 N.J. Super. 472, 475 (App. Div. 2007). In Mt. Hope Development Associates v. Mt. Hope Waterpower Project, LP, 154 N.J. 141, 152 (1998), our Supreme Court identified a child support order as an example of such an exception. In addition, the Court indicated there may be other "'rare circumstances' . . . . where public policy would require appellate court review," including cases where review is necessary for it to carry out its "supervisory

function over the courts." Ibid. (quoting Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 364-65 (1994)).

The "rare circumstances" enabling further review beyond the trial court in APDRA matters arise only in situations where such appellate review is needed to effectuate a "nondelegable, special supervisory function," of the appellate court. Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 239 (App. Div. 2008) (citing Mt. Hope Dev. Assocs., 154 N.J. at 152). In a few exceptional instances, we have elected to perform such appellate review in an APDRA matter. See, e.g., Selective Ins. Co. of Am. v. Rothman, 414 N.J. Super. 331, 341-42 (App. Div. 2010) (reversing a trial court's order erroneously upholding a decision of a DRP, who failed to enforce a clear statutory mandate involving a "matter of significant public concern"), aff'd, 208 N.J. 580 (2012); Kimba 431 N.J. Super. at 482 (invoking the jurisdictional exception to undertake appellate review of unresolved and recurring legal questions concerning the proper interpretation of APDRA).

Similar to Kimba, public policy supports our review of the trial court's decisions here because conflicting interpretations of N.J.A.C. 11:3-29.4 will likely lead to continued litigation, thereby undermining the Legislature's intent in enacting APDRA. In Kimba, we invoked the public policy exception in interpreting procedural matters under the APDRA, because the issue before us:

7

1) had only been addressed in unpublished cases; 2) involved matters that "should not be guessed at by the participants from case to case," including "[t]he repeat players in the PIP system – claimants, insurers, DRPs, lawyers, and trial judges –" who could all "benefit from definitive precedential guidance"; and 3) involved a matter of statutory interpretation. Id. at 482-83.

In the cases under review, we must interpret a regulation that Forthright and the Law Division have interpreted inconsistently. No published cases have addressed the issue before us; in light of the absence of needed precedent, public policy favors review of the instant matter.

Moreover, the Legislature enacted APDRA to "create a new procedure for dispute resolution which would be an alternative to the present civil justice system and arbitration system in settling disputes. It is intended to provide a speedier and less expensive process for resolution of disputes than traditional civil litigation . . . ." Mt. Hope Dev. Assocs., 154 N.J. at 145 (citing Governor's Reconsideration and Recommendation Statement to Assembly Bill No. 296, at 1 (Jan. 7, 1987), reprinted at N.J.S.A. 2A:23A-1). Additionally, the Legislature intended for APDRA to provide "a formal method of resolving disputes with predictable rules, procedures, and results . . . ." Ibid. (citing Draftsman's Legislative History, reprinted at N.J.S.A. 2A:23A-1). Thus, declining to address this matter would frustrate the Legislature's intent because

without guiding precedent, continued litigation will likely ensue, burdening insureds, insurers, and medical providers with unnecessary costs of litigation and unwelcome delays. We therefore invoke the public policy exception to address the following issue: whether automobile insurers are required to reimburse ASCs where the CPT code for the procedure does not appear in the Fee Schedule.

III.

On appeal, both defendants argue the trial court mistakenly concluded the arbitrators erroneously applied the law to the issues and facts in the cases before them. We exercise de novo review of legal questions. State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendants base their argument on the fact that, on January 1, 2015, the Federal Center for Medicare and Medicaid Services (CMS or Medicare) revised its approved procedures list. Among the newly-added procedures reimbursable to ASCs, the revised list included CPT code 63030 – "lower back disk surgery."

Defendants contend an applicable regulation states the Fee Schedule shall be interpreted in accordance with the amended Medicare claims manual in effect when the service was provided, notwithstanding the absence of a CPT

9

code in the Fee Schedule. Specifically, defendants rely upon N.J.A.C. 11:3-29.4(g), which provides, in pertinent part:

> Except as specifically stated to the contrary in this subchapter, the fee schedules shall be interpreted in accordance with the following, incorporated herein by reference, as amended and supplemented: the relevant chapters of the Medicare Claims Processing Manual, updated periodically by CMS, that were in effect at the time the service was provided.

Defendants therefore argue the plain language of N.J.A.C. 11:3-29.4(g) requires insurance companies to reimburse ASCs for any procedures performed under CPT codes subsequently approved by the CMS. Because defendants performed the procedures at issue after Medicare updated its ASC reimbursement guidelines to include CPT 63030, defendants contend they are entitled to reimbursement for the subject procedures.

In response, NJM argues the plain language of another regulation controls, prohibiting payment to ASCs for CPT codes not listed in the Fee Schedule. Specifically, NJM relies upon N.J.A.C. 11:3-29.4(e), which provides:

> Except as noted in (e)[(1)] through (3) below, the insurer's limit of liability for any medical expense benefit for any service or equipment not set forth in or not covered by the fee schedules shall be a reasonable amount considering the [F]ee [S]chedule amount for similar services or equipment in the region where the service or equipment was provided . . . . The amount that the insurer pays for the service shall be in

accordance with this subsection. Where the [F]ee [S]chedule does not contain a reference to similar services or equipment as set forth in the preceding sentence, the insurer's limit of liability for any medical expense benefit for any service or equipment not set forth in the fee schedules shall not exceed the usual, customary[,] and reasonable fee.

. . . .

3. Codes in [the Fee Schedule] that do not have an amount in the ASC facility fee column are not reimbursable if performed in an ASC and are not subject to the provision in (e) above concerning services not set forth in or covered by the fee schedules.

NJM supports its position by citing the Department's responses to commenters during the notice and comment period for the Fee Schedule, as well as the following question and answer posted on the Department's website, under "Auto Medical Fee Schedule Frequently Asked Questions":

[Question] 6. There is no fee in the ASC facility fee column of [the Fee Schedule] for the service I want to provide in an ASC.

[Department Response.] N.J.A.C. 11:3-29.5(a) and 29.4(e)(3) state that when there is no fee in the ASC facility fee column of [the Fee Schedule] for a service, the facility fee for that service is not reimbursable if performed in an ASC. Stated another way, the only facility fees that are reimbursable for services performed in an ASC are those CPT and HCPCS codes that have facility fees listed in the ASC Facility Fee Column of [the Fee Schedule]. The fact that, subsequent to the promulgation of the fee schedule rule, CMS may have authorized additional procedures

11

to be performed in an ASC does not permit an ASC to be reimbursed for those services unless there is an amount listed in the ASC Fee Column on [the Fee Schedule] for the corresponding CPT code . . . .

Thus, NJM argues:

[W]hile an ASC may receive payment for hosting a spine surgery for a CMS/Medicare patient, these services are not payable to ASCs under New Jersey PIP. Stated another way, an ASC may host a procedure utilizing the "new" spine surgery codes[,] but it cannot be paid by a No-Fault insurer.

NJM further asserts that because of this court's deference to an agency's interpretation of its own rules, the Department guidance "definitely resolves" the instant matter. See N.J. Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) ("Courts afford an agency 'great deference' in reviewing its 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." (quoting NJSCPA v. N.J. Dept. of Agriculture, 196 N.J. 366, 385 (2008))).

In 2007, the Department adopted new rules and amendments modifying reimbursement to medical providers, including ASCs. These regulations were challenged, but affirmed. In re Adoption of N.J.A.C. 11:3-29, 410 N.J. Super. 6, 13 (App. Div. 2006). In 2012, the Department adopted revised "regulations addressing reimbursable medical procedures and the facilities in which they can be performed," and related issues. The revised regulations were also

challenged and affirmed. <u>N.J. Healthcare Coal. v. N.J. Dept. of Banking & Ins.</u>, 440 N.J. Super. 129, 133 (App. Div. 2015).

The 2012 Fee Schedule listed various CPT codes. For many, there was an amount listed that could be reimbursed to an ASC if it performed the service listed. For some other listed CPT codes, there was no reimbursement figure for an ASC. Clearly, if the CPT code is listed and no amount is set forth for an ASC, the ASC cannot receive payment for that service. Defendants do not dispute this point; however, they argue this case presents a different issue, the situation where the CPT code in question does not appear at all in the Fee Schedule.

The history of the adoption of the 2012 Fee Schedule supports NJM's position in this case. The Department announced its proposed amendments to the Fee Schedule on August 1, 2011. 43 N.J.R. 1640a. Significantly, that proposal included CPT code 63030; however, it provided for reimbursement to physicians only – it did not provide for reimbursement to ASCs.

The regulation was reproposed on February 21, 2012, with substantial changes, apparently based on comments the Department received. The Department then excluded 117 CPT codes relating to neurosurgery, and provided the following explanation:

> Amendments are also proposed to . . . the Physicians'
> and Ambulatory Surgical Center Facility Fee

13

Schedule, to delete physician fees for 117 CPT codes for low-frequency, high-cost procedures performed by neurosurgeons and spinal surgeons that were added in the proposal. Comments submitted on the proposal provided data indicating that there are only approximately [eighty] such specialists currently practicing in New Jersey. Consequently, and as was noted in the proposal, the available data on the fees paid to these providers for these low-frequency procedures is limited. For this reason, the Department has determined that caution is warranted and further study of more comprehensive data is needed before a final conclusion is reached to include these codes on the Physicians' Fee Schedule. Accordingly, [the Fee Schedule] is proposed to be amended upon adoption to delete the physician fees for the 117 CPT codes referenced above. CPT codes for which there is no amount in the Physicians' Fee column of [the Fee Schedule] are reimbursed at the usual, customary, and reasonable fee for the service. Forty-two of the 117 codes remain in [the Fee Schedule] because, although there is no physician fee for the code, there is an ASC facility fee for that code. The Department will make a further study of the issues raised in these comments as part of its biennial review of the fee schedules required by N.J.S.A. 39:6A-4.6.

[44 N.J.R. 383(a).]

In November 2012, after the adoption of the Fee Schedule at issue, the

Department responded to a comment as follows:

Upon review of the comments received, the Department has determined that additional study of the physician fees for 117 CPT codes on the Physicians' Fee Schedule for spinal and neurosurgical procedures is required. As was noted in the proposal, the available data on the fees paid to providers for these low-frequency procedures is limited. As was

14

referenced in the notice of proposed substantial changes, the Department is removing the fees for these codes from the Physicians' Fee Schedule upon adoption until this issue can be studied further.

[44 N.J.R. 2652(c).]

Thus, when the regulation was proposed originally, CPT code 63030 provided for reimbursement to doctors but not to ASCs. Then the Department removed code 63030 and other codes from the Fee Schedule for doctors because it did not have enough experience to have confidence that the reimbursement numbers were sound. This history indicates the Department did not intend to require that ASC's should receive reimbursement for code 63030 procedures. That position is consistent with the Department's answer to frequently-asked question number six.

We conclude that ASCs should not receive reimbursement for CPT code 63030 procedures because no reimbursement was listed in the ASC columns in the Fee Schedule, as originally proposed. This omission provides a clear indication of the Department's intent not to reimburse ASCs for CPT code 63030 procedures. The fact that Medicare now includes the CPT code does not result in the automatic amendment of the Fee Schedule; instead, we conclude it is the Department, not Medicare, that amends the Fee Schedule.

Any arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

15

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16