**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2328-18T3

JAY SHETH and
RAHKEE SHETH,

     Plaintiffs-Appellants,

v.

MORRIS BOULEVARD, II,
LLC, STONEHYRST COMPANY
TRUST, LORRAINE MOCCO,
PETER MOCCO, GRAND STREET
PROPERTY MANAGEMENT, LLC,
GRAND & JERSEY, LLC, LIBERTY
HARBOR NORTH II URBAN RENEWAL
COMPANY, LLC, and SEAN YOUNG,

     Defendants-Respondents.

_____

Submitted January 16, 2020 – Decided July 23, 2020

Before Judges Nugent and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0474-14.

The Feinsilver Law Group, PC, attorneys for appellants (David Feinsilver and H. Jonathan Rubinstein, of counsel and on the briefs).

Scarpone & Vargo, LLC, attorneys for respondent Liberty Harbor North II Urban Renewal Company (James A. Scarpone and Bruce D. Vargo, on the brief).

Law Offices of Shannon Garrahan, PC, attorneys for respondents Morris Boulevard, II, LLC, Stonehyrst Company Trust, Lorraine Mocco, Peter Mocco, Grand Street Property Management, LLC, Grand & Jersey, LLC, and Sean Young, join in the brief of respondent Liberty Harbor North II Urban Renewal Company.

PER CURIAM

Plaintiffs, Jay and Rahkee Sheth, appeal from Law Division orders that confirmed an arbitration award under New Jersey's Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -30, and denied their motion for reconsideration. When parties to an APDRA arbitration file a Law Division action challenging such awards, they are entitled to a decision specifically addressing their claims and applying relevant statutory standards. Because the trial court's brief written explanation in this case does not satisfy these requirements, we exercise our supervisory authority, vacate the orders, and remand for oral argument and a new decision. The trial court's decision should specifically address plaintiffs' arguments and apply the statutory standards to them.

These are the underlying facts. In 2006, defendant Liberty Harbor North Brownstone Condominium Urban Renewal, LLC, (Liberty) began a redevelopment project in Jersey City. According to the initial public offering statement approved by Jersey City officials, Liberty described its residential units, or condominiums, as having five floors with an unfinished basement, which collectively were considered "residential space." On July 24, 2012, plaintiffs entered into a Subscription and Purchase Agreement with Liberty to buy one of the units, (the condo or the property) for $1,085,000. The parties agreed to close on December 1, 2012.

A portion of the Liberty redevelopment project, including the condo, was in a designated flood zone. This became an issue in the wake of Superstorm Sandy, which occurred in October 2012, before closing. After Sandy, the redevelopment project was deemed "a site-wide violation," and Jersey City's construction codes prohibited issuance of any certificates of occupancy until the flood zone issues were resolved. Liberty informed plaintiffs it could not close on time but arranged a one-year lease between plaintiffs and defendant Morris Boulevard II, LLC, for a rental unit. Plaintiffs' monthly rent payments of $3900 would be credited against the purchase price of the condo.

A-2328-18T3

On May 9, 2013, Liberty obtained a temporary sixty-day certificate of occupancy. On May 23, 2013, defendant Peter Mocco, an attorney and owner of Liberty, sent a "time of the essence" letter to plaintiffs informing them closing would take place on June 11, 2013. Plaintiffs agreed to the closing date provided certain "punch-list items" were addressed. Plaintiffs sent an inspector to the property on two occasions, but he could not conduct the inspection because the property remained under construction. Because there was no substantiation the punch-list items had been addressed, plaintiffs refused to close on June 11.

On July 26, 2013, Mocco's daughter, Marjorie, also an attorney, sent a letter to plaintiffs on behalf of Liberty terminating the purchase agreement because plaintiffs had not closed on June 11, 2013, as required by the time of the essence letter. Plaintiffs responded with a demand to close on August 9, 2013, which Liberty rejected.

Mocco next arranged to transfer the condo from Liberty to Stonehyrst Company Trust (the trust) for $750,000. Mocco was the trust's settlor, his children the beneficiaries, and his brother Joseph the sole trustee. Mocco's wife, Lorraine, loaned the $750,000 to the trust, but denied having knowledge of the property or trust terms. In August 2013, title to the condo was transferred to the

A-2328-18T3

trust, the deed was recorded, and the trust listed the condo for sale for $1,500,000.

Disputing the legality of the condo's sale to the trust, plaintiffs filed a Superior Court action against Liberty and thereafter an action against the other defendants. The parties eventually agreed to arbitrate their disputes pursuant to the APDRA. The Superior Court actions were dismissed.

Following numerous hearings, the arbitrator determined Liberty unjustifiably terminated the purchase agreement and transferred the condo to the trust. Finding a breach of contract and fraudulent conveyance, the arbitrator ordered specific performance of the purchase agreement.

The arbitrator based his decision to order specific performance, in part, on the testimony of a Jersey City construction official. The arbitrator found that for plaintiffs to receive the benefit of their bargain, all five floors of the condo, including the basement, had to be brought into compliance with applicable codes. As the arbitrator understood, Liberty had to do whatever was "reasonably necessary" to obtain and secure a variance to complete construction of the condo.

Ordering the purchase price of the condo to be what the trust paid, $750,000, the arbitrator concluded plaintiffs would receive the benefit of their

bargain and found they had no remaining ascertainable loss. The arbitrator dismissed plaintiffs' additional claims under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224, and their request for attorney's fees.

One month after the arbitrator's written decision, plaintiffs' counsel wrote to the arbitrator to raise "a serious concern" about the Jersey City construction official's testimony. Counsel explained he had asked the official for clarification about his testimony in terms of the award, and the official responded that his testimony was "taken out of context" with respect to Liberty obtaining a variance. According to the official, the matter would only be addressed upon "presentation of documents, drawings, [and] engineering investigations" for the entire Liberty complex.

On June 28, 2018, the arbitrator held a settlement conference to address the construction official's change in position. The parties could not agree on terms under which to reopen the hearing for further testimony. Thus, the same day, the arbitrator issued an order and award based on his previous decision.

The arbitrator's award required Liberty to complete the following within sixty days: finish construction of the condo; obtain all necessary permits; obtain a variance on the property so all five floors would be deemed residential and safe; and transfer title of the condo to plaintiffs for $750,000 upon completion

6

of construction. On the cover page of the order, the arbitrator wrote, "the order is executed fully acknowledging that without a change of position by the Jersey City construction code additional litigation will be required."

Three months later, plaintiffs moved to confirm in part and modify in part the arbitration award. They cited the construction official's change in position and contended that because specific performance would not occur in the foreseeable future, they would not receive the benefit of their bargain. In addition, they argued the arbitrator had misapplied the law to the facts presented to him and thus erroneously decided their CFA claim and claim for benefit-of-the-bargain damages. They also alleged the arbitrator had inadequately performed his duties by failing to address at least one of their claims. They sought modification of the award or a remand to the arbitrator based on changed circumstances. Plaintiffs did not "request oral argument unless timely opposition is filed, in which case oral argument is requested pursuant to Rule 1:6-2(d)."

The trial court confirmed the arbitration award. The court found "no erroneous fact-finding or conclusions of law by the arbitrator. Limiting the arbitration award to specific performance is well within the arbitrator's purview

A-2328-18T3

and wholly supported by the record.  The parties agreed to submit to binding arbitration."

The trial court modified and signed a proposed order submitted by plaintiffs.  The order includes in its introductory form language that it is based on "the reasons stated by the Court on the record."  Although the trial court did not strike the language, the court noted in its written notations on the order, "[o]pposition papers were received and considered." The court's short written explanation of its decision does not reference a supplemental oral decision.  Plaintiffs have represented on their notice of appeal "there is no verbatim record for this appeal."  The trial court did not have oral argument as requested by plaintiffs.

One month later, plaintiffs moved for reconsideration and expressly requested "oral argument on the motion."  On January 11, 2019, the court denied plaintiffs' motion for reconsideration.  The court noted on the memorializing order:

> [T]he motion for reconsideration was not timely filed. Moreover, since the basis for the relief requested is acts or omissions of the defendants alleged to have occurred AFTER the matter was arbitrated, the moving party herein is free to file a new action since, admittedly, the facts are outside the scope of the adjudicated case and provide an independent basis for a separate action.

Plaintiffs filed this appeal. They urge us to exercise our supervisory function and review the trial court's orders because, among other reasons, the trial court denied their request for oral argument and failed to specifically address their arguments and analyze them by applying relevant legal principles to the arbitrator's decision. They also argue the trial court erred by denying their motion for reconsideration as untimely. Defendants respond that there is no basis for plaintiffs' appeal under the APDRA and plaintiffs' appeal of the order denying their motion for reconsideration is irrelevant to the confirmation of the arbitration award.

The relevant APDRA sections concerning vacation, modification, or correction of arbitration awards provide:

> b. In considering an application for vacation, modification or correction, a decision of the umpire on the facts shall be final if there is substantial evidence to support that decision; provided, however, that when the application to the court is to vacate the award pursuant to paragraph (1), (2), (3), or (4) of subsection c., the court shall make an independent determination of any facts relevant thereto de novo, upon such record as may exist or as it may determine in a summary expedited proceeding as provided for by rules adopted by the Supreme Court for the purpose of acting on such applications.
>
> c. The award shall be vacated on the application of a party who either participated in the alternative resolution proceeding or was served with a notice of

intention to have alternative resolution if the court finds that the rights of that party were prejudiced by:

(1) Corruption, fraud or misconduct in procuring the award;

(2) Partiality of an umpire appointed as a neutral;

(3) In making the award, the umpire's exceeding their power or so imperfectly executing that power that a final and definite award was not made;

(4) Failure to follow the procedures set forth in this act, unless the party applying to vacate the award continued with the proceeding with notice of the defect and without objection; or

(5) The umpire's committing prejudicial error by erroneously applying law to the issues and facts presented for alternative resolution.

[N.J.S.A. 2A:23A-13(b) and (c).]

A party to arbitration under the APDRA may seek to vacate, modify, or correct an award by initiating a summary application with the Superior Court. N.J. Mfrs. Ins. Co. v. Specialty Surgical Ctr. of N. Brunswick, 458 N.J. Super. 63, 67 (App. Div. 2019) (citing N.J.S.A. 2A:23A-13). Generally, once the Superior Court makes its decision on a summary action challenging the APDRA award, "[t]here shall be no further appeal or review of the judgment or decree." N.J.S.A. 2A:23A-18(b). However, in rare circumstances where public policy requires appellate review, the Appellate Division is required "to carry out its

A-2328-18T3

'supervisory function over the courts.'" Specialty Surgical, 458 N.J. Super. at 68 (quoting Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 152 (1998)). The supervisory function exception applies only in "exceptional instances." Id. at 68-69 (finding public policy supported appellate review due to conflicting interpretations of a code provision, and general "absence of needed precedent"); Kimba Med. Supply v. Allstate Ins. Co., 431 N.J. Super. 463, 482-83 (App. Div. 2013) (finding public policy supported appellate review due to "unsettled questions of statutory interpretation" which had not yet been addressed in published cases); Selective Ins. Co. of Am. v. Rothman, 414 N.J. Super. 331, 341-42 (App. Div. 2010) (finding public policy supported appellate review when the trial court erroneously determined physician assistants could perform procedures explicitly reserved for licensed doctors according to the relevant statute).

Precedent supports the exercise of our supervisory function. A party challenging an APDRA decision is "entitled to a ruling applying the relevant statutory standards." Morel v. State Farm Ins. Co., 396 N.J. Super. 472, 476 (App. Div. 2007). Thus, we may exercise our supervisory function "to ensure that trial courts utilize the standards contained in N.J.S.A. 2A:23A-13 when examining an [APDRA] award, and that trial courts articulate an analysis of how

those standards apply to the facts and circumstances of a given case." Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., L.L.C., 413 N.J. Super. 513, 526 (App. Div. 2010).

In other words, a trial court reviewing an APDRA decision must provide some insight into whether it applied the proper standards, and how it reached its decision. See ibid. (holding where the trial court has failed to provide a decision, written or oral, demonstrating its application of the relevant standard or how it reached its determination, "[i]n such a circumstance, we are entitled--indeed, obligated--to exercise our supervisory function and remand for further proceedings consistent with APDRA.")

Here, the trial court did not provide an adequate basis for its decision. Plaintiffs challenged the award with regard to specific performance, receiving the benefit of their bargain, and relief under the CFA. After refusing to hear oral argument, the trial court confirmed the arbitration award, apparently on the papers, and stated its reasons in four sentences:

> Motion is GRANTED, in part. Applying APDRA to this case, the court finds no erroneous fact-finding or conclusions of law by the arbitrator. Limiting the arbitration award to specific performance is well within the arbitrator's purview and wholly supported by the record. The parties agreed to submit to binding arbitration.

Plaintiffs were entitled to a ruling that considered their "specific claims." Morel, 396 N.J. Super. at 475; see also Rule 1:7-4(a) ("The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, [and] on every motion decided by written order that is appealable as of right . . . ."). They were entitled to an analysis of their claims and an explanation why each of their claims either did or did not satisfy the statutory criteria for vacation, modification, or correction of an arbitrator's award.

The trial court's orders are vacated and the matter is remanded. The trial court shall afford the parties oral argument if requested and issue a decision that applies the relevant statutory standards to plaintiffs' arguments.

Vacated and remanded for further proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2328-18T3